**Bill WILLIAMS, Plaintiff,**

v.

**Jack R. DUCKWORTH, et al., Defendants.**

**Civ. No. S 85–116.**

United States District Court, N.D. Indiana, South Bend Division.

Aug. 29, 1985.

Bill Williams, pro se.

Robert B. Wente, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

### ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on a Motion to Dismiss filed by all defendants. Plaintiff has had the opportunity to respond, but has chosen not to respond to the defendants' motion.[1] For the following reasons, defendants' motion to dismiss will be granted.

■■■ Plaintiff is proceeding *pro se.* Plaintiff is a prisoner incarcerated in the Indiana State Prison at Michigan City, Indiana. Where, as here, the non-moving party is proceeding *pro se,* the court must be especially cautious, for the pleadings, by definition, are drafted by a non-lawyer. *See Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Thus, as a general rule, a *pro se* complaint will not be dismissed unless "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief.'" *Haines,* 404 U.S. at 519–20, 92 S.Ct. at 596 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). *Pro se* pleadings are to be liberally construed; the district court's role is to ensure that the claims of *pro se* litigants are given "fair and meaningful consideration." *Matzker v. Herr,* 748 F.2d 1142, 1146 (7th Cir.1984); *Caruth v. Pinkney,* 683 F.2d 1044, 1050 (7th Cir.1982). This court also recognizes that federal courts have historically exercised great tolerance to ensure that an impartial forum remains available to plaintiffs invoking the jurisdiction of the court without the guidance of trained counsel. Recognizing the liberality which must be afforded *pro se* pleadings, this court will now address the defendants' motion to dismiss.

The Seventh Circuit articulated the three elements of a successful res judicata defense in *Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982):

> The doctrine of res judicata is that a final judgment on the merits in a court of competent jurisdiction bars the same parties or their privies from relitigating not only the issues which were in fact raised and decided but also all other issues which could have been raised in the prior action.... The essential elements of the doctrine are generally stated to be: (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of

---

1. Also pending before this court is Williams' motion to amend his complaint and motion to extend time to respond, filed, respectively, March 7, 1985, and March 26, 1985. Williams' motion to amend is GRANTED and the subject matter of that amendment, further elaboration of facts regarding the legal mail issue, is treated herein in detail. In his motion to extend time, plaintiff asked to have until June 4, 1985; that motion is granted, by implication, due to the passage of time. This case was not assigned to the undersigned until July 11, 1985 and was not able to be reached until August, 1985. Plaintiff had ample opportunity to make a response to defendants' motion, but chose not to make a response, although he did file another motion in this case.

action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits.

*Id.* at 199 (citations omitted) *quoted in Mandarino v. Pollard,* 718 F.2d 845, 849 (7th Cir.1983), *cert. denied,* — U.S. —, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984). *See also Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 1889–90 n. 6, 72 L.Ed.2d 262 (1982); *Vandenplas v. City of Muskego,* 753 F.2d 555, 559 (7th Cir.1985).

Williams raises in this lawsuit, Civil No. S 85–116, the same issues raised by Williams in an earlier suit, Civil No. S 84–75. Just as in S 84–75, this complaint centers on two or possibly three occasions where various defendants entered Williams' prison cell and confiscated certain articles of Williams' personal property, including legal papers. Williams asserts that the confiscation of certain personal articles by the defendants constitutes violations of his fourth amendment, fifth amendment and fourteenth amendment rights. In S 84–75, plaintiff argued that the same confiscation of articles constituted violations of his first amendment, fifth amendment, sixth amendment, eighth amendment and fourteenth amendment rights. The court, in disposing of S 84–75 on the merits, noted that it was an alleged fourth amendment violation upon which all the other violations of the constitutional amendments rested.

On December 3, 1984, this court entered an order granting the defendants' motion for summary judgment. Plaintiff was notified and had ample opportunity to respond to the defendants' motion in S 84–75. Indeed, plaintiff did respond to the defendants' motion for summary judgment in that case. This court's order of December 3, 1984 in S 84–75 disposed of Williams' claims on their merits. The court determined in that order that no constitutional violations occurred in the taking from Williams of certain personal articles. The court determined that the events occurred in accordance with applicable rules and regulations of the correctional facility and were related to discrete and identifiable needs of the correctional authorities. Williams did not choose to take an appeal of this court's order of December 3, 1984, in S 84–75. Therefore, this court's judgment in S 84–75 became final January 3, 1985. Plaintiff filed his current case, S 85–116, on February 8, 1985.

■ This case, S 85–116, presents the identical factual situation and basically the same allegations of constitutional amendment violations. Plaintiff does raise an additional issue in S 85–116 which is the issue of whether the defendants have the right to open plaintiff's legal correspondence. This additional issue is based on the same fact pattern of the earlier case, S 84–75. The doctrine of res judicata "applies to § 1983 actions with respect to the issues actually litigated and also issues which could have been but were not litigated in the [earlier] proceedings." *Vandenplas,* 753 F.2d at 559 (citing *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Lee,* 685 F.2d at 198–99). This issue is, according to Williams, also being litigated in a class action suit in this court, S 83–4.

■ All of the essential elements of the doctrine of res judicata are present in this case. First, a final judgment on the merits occurred in an earlier action, S 84–75. In that earlier case, the court entered judgment on behalf of the defendants after examining the same facts and same allegations of constitutional violations. Williams did not appeal that disposition; that disposition is final. Second, an identity of the cause of action in both the earlier and this later suit exists. Basically, Williams believes he has been wronged by the actions of the defendants in attempting to carry out the important correctional goal of preserving internal order and discipline to maintain institutional security. The additional allegation of the opening of plaintiff's legal mail does not alter the conclusion that the causes of action are identical. Such an issue was known to plaintiff at the

time he filed his earlier suit, S 84–75, and the issue could have been litigated in the earlier matter,[2] and is, apparently, being litigated in another action in this court. Plaintiff is foreclosed from raising the additional issue in this later suit just as he is barred from relitigating the issues raised, on the same facts, in the earlier action. Finally, there is an identity of parties in the two suits.

■ This case requires a classic textbook application of the doctrine of res judicata. Williams is attempting to use the court to relitigate facts and allegations which have already been thoroughly examined and disposed of by the court. Williams is attempting to frustrate "the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction." *Kremer*, 456 U.S. at 466 n. 6, 102 S.Ct. at 1890 n. 6. The dispute which is the subject of this current lawsuit was finally and conclusively resolved by this court on December 3, 1984 in the earlier action of Civil No. S 84–75. Williams' action is barred by the doctrine of res judicata.

■ The fact that plaintiff's claims in this lawsuit were issues which were either actually litigated in an earlier suit or could have been litigated, but were not in the earlier suit, mandates a further response from this court. The Seventh Circuit clearly states that insistence on litigating a question in the face of controlling precedent which removes every colorable basis in law for a litigant's position amounts to bad faith justifying the imposition of sanctions. *Reid v. United States*, 715 F.2d 1148, 1154 (7th Cir.1983); *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269–70 (7th Cir.1983). Here, plaintiff at-

tempts to reassert his claims against the various prison authorities who were defendants in the earlier case, despite the fact that this court previously held that plaintiff's claims against the defendants were meritless. Controlling precedent and the earlier lawsuit have removed every colorable basis in law for Williams' position. "[T]he law may be so clear and well established that persistence in the course of litigation could be evidence of bad faith." *Reid*, 715 F.2d at 1154. Williams' persistence is, indeed, evidence of bad faith. Thus, this court has sufficient equitable power to assess sanctions because it finds that plaintiff's suit is pursued in bad faith. *See Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 828 (7th Cir.1984); *Benner v. Negley*, 725 F.2d 446, 449 (7th Cir.1984).

A recent Seventh Circuit case further crystallized the standard for assessing sanctions when actions are brought in bad faith:

A district court, however, may award fees when the losing litigant has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). Bad faith has been defined as conduct without at least a colorable basis in law. (Citation omitted). Thus, the filing of a frivolous lawsuit may demonstrate bad faith where the suit is so completely without hope of succeeding that the court can infer that the plaintiff brought the suit to harass the defendants rather than to obtain a favorable judgment. (Citations omitted.)

*Glick v. Koenig*, 766 F.2d 265, 270 (7th Cir.1985). It is abundantly clear to this court that plaintiff knew, when he filed this lawsuit on February 8, 1985, that the suit

---

**2.** Even if this court were to address the additional legal issue raised in this action regarding the opening of Williams' legal correspondence on its merits, the court would resolve the issue in favor of the defendants. This court addressed and resolved the issue of the prison authorities' right to open legal mail in *McChristion v. Duckworth*, 610 F.Supp. 791 (N.D.Ind. 1985). The court therein concluded that prison authorities have the right to open legal mail as

long as the authorities comply with the strictures set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *Id.* at 795–96. There is absolutely nothing in this record to show that any violation of *Wolff* requirements occurred; Williams' generalized complaint about his legal mail is that it is being opened. The defendants clearly possess the right to open legal mail.

was completely without hope of succeeding. From that fact, the court can readily infer that the plaintiff brought the suit solely to harass the defendants rather than to obtain a favorable judgment.

When plaintiff filed this lawsuit, he was aware that the earlier lawsuit, presenting identical issues and presenting the opportunity to raise the legal mail issue, had been resolved in favor of the defendants. In fact, the court, in that earlier judgment, had pointed out repeatedly that controlling precedent had removed every colorable basis in law for the litigant's position. This current lawsuit can only be characterized as "a transparent attempt to bully the administration of justice." *Id.* at 270.

In addition, Rule 11 of the Federal Rules of Civil Procedure creates a second source of power to impose sanctions. Rule 11, which governs the signing of pleadings and motions, requires that each pleading or motion be signed by an attorney or the party if the party is proceeding *pro se*. The rule then provides:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a pleading violates this rule the court "shall impose" an "appropriate sanction," which may include the amount of reasonable expenses and attorney fees incurred by the other party because of the filing of the pleading or motion.

The notes of the Advisory Committee on the Federal Rules make clear that Rule 11's provisions are designed to "discourage dilatory or abusive tactics and [to] help streamline the litigation process by lessening frivolous claims or defenses." The rule applies to anyone who signs a pleading, motion, or other paper and the same standards apply to *pro se* litigants, although the concerns of *Haines v. Kerner,* 404 U.S. at 519, 92 S.Ct. at 594, should be taken into account.

The core of Rule 11 is that the signature on the pleading certifies that "to the best of his knowledge, information and belief formed after reasonable inquiry it [the pleading, motion or paper] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law[.]" What is important to note is that this language requires more than just a belief that the law is or should be a certain way; as the Advisory Committee states, "what constitutes a reasonable inquiry may depend on ... whether the pleading, motion, or other paper was based on a plausible view of the law," and is, thus, a "more stringent" standard than good faith.

This court has assessed Rule 11 sanctions for filing meritless lawsuits, e.g., *Snyder v. IRS,* 596 F.Supp. 240 (N.D.Ind. 1984); *Cameron v. IRS,* 593 F.Supp. 1540 (N.D.Ind.1984), for litigating an issue which the court had in a previous order declared to be meritless, *Hilgeford v. Peoples Bank, Portland, Indiana,* 607 F.Supp. 536 (N.D.Ind.1985), and for duplicative litigation of potentially meritorious claims, *Sanders v. City of Fort Wayne,* 616 F.Supp. 467, 471 (N.D.Ind.1985). This court has the power to impose Rule 11 sanctions for Williams' attempt to relitigate issues already conclusively determined and declared to be meritless.

Applying an objective standard, the court concludes that this lawsuit was brought in bad faith; this lawsuit is dilatory, frivolous, and a transparent attempt to harass the defendants. Such conduct is bad faith justifying an award of attorney fees and a fine payable to the Clerk of this court. While this court will readily entertain any lawsuit advancing meritorious claims, it will not countenance multiple lawsuits on the same facts. Such suits waste judicial resources and require duplicative efforts by both court and defendants alike.

Plaintiff files suit in the Northern District of Indiana on a regular basis. Since December 6, 1977, Williams has been successful in filing sixteen cases, twelve of which are civil rights suits and four of which are habeas corpus actions.[3] Most of the suits involved the defendants herein. Each of the lawsuits have required counsel for defendants to expend amounts of time in developing intelligent responses. In this particular suit, counsel for defendants had to spend time defending against causes of action already conclusively determined to be without merit. Plaintiff filed four motions, in addition to the complaint, for which investigation and research were necessary in order to respond in good faith. Defendants had to move for a protective order on discovery while the motion to dismiss, clearly well taken, was under advisement; that motion required time and effort on the part of counsel for defendants. A very conservative estimate of the fees incurred in dealing with this frivolous lawsuit is Two Hundred Dollars ($200.00). The court will therefore award such an amount to counsel for the defendants under Rule 11.

The burden on this court in dealing with this frivolous lawsuit is as great as that on defense counsel. This suit has forced a significant expenditure of judicial resources in order to deal fairly with a groundless, frivolous, dilatory and meritless claim. An appropriate sanction under Rule 11 can include a fine payable to the Clerk of this court. The court finds that a fine of One Hundred Dollars ($100.00) is an appropriate and justified sanction under Rule 11.

In order to avoid further duplicative lawsuits or motions, the court hereby puts plaintiff on notice that, should he attempt to relitigate issues already disposed of by the court, he will do so with full knowledge that this court will impose Rule 11 sanctions upon him. The court reiterates that it stands ready to accept meritorious cases.

However, this court will not accept duplicative lawsuits that force the unnecessary expenditure of judicial resources.

Accordingly, on the basis of the foregoing, defendants' Motion to Dismiss is hereby GRANTED. Plaintiff is also hereby ORDERED to pay Two Hundred Dollars ($200.00) to defense counsel as attorney fees as a Rule 11 sanction for filing this lawsuit. In addition, plaintiff is also hereby ORDERED to pay a fine of One Hundred Dollars ($100.00) to the Clerk of this court as an additional Rule 11 sanction.

---

**3.** In Williams' granted motion to amend pleadings, he refers to a class action suit in which he is, apparently, a party, that also raises the legal mail issue. The sixteen cases noted involve only Williams individually; thus, it is likely Williams has successfully filed seventeen cases in this court, thirteen of which are civil rights suits.